UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GEORGE O. MITCHELL, | CASE NO. 3:15-CV-05226-RBL-DWC |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION ON DEFENDANT DIXON'S MOTION TO DISMISS |
| WASHINGTON STATE SPECIAL COMMITMENT CENTER CHIEF MEDICAL DIRECTOR, DR. LESLIE SZIEBERT; WASHINGTON STATE SPECIAL COMMITMENT CENTER, GALINA DIXON, ARNP, | Noting Date: June 10, 2016 |
| Defendant. | |

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Before the Court is Defendant's Motion to Dismiss filed by Defendant Galina Dixon ("Dixon"). Dkt. 29.

The Court concludes Plaintiff has failed to state a claim against Defendant Dixon upon which relief can be granted. Therefore, the Court recommends Defendant Dixon's motion be granted, and Plaintiff given leave to amend his complaint to state a claim against Defendant Dixon.

# BACKGROUND[1]

Plaintiff is a civilly-committed detainee at the Washington State Special Commitment Center ("SCC"). Dkt. 15, p. 1; ¶ 9.2.[2] Plaintiff alleges he was diagnosed with Hepatitis C on December 14, 2000. Dkt. 15, ¶¶6.1-6.2. In June of 2002, Plaintiff began treatment under the care of Dr. W. Michael Priebe, M.D., a specialist outside of the SCC. Dkt. 15, ¶ 6.3. In February, 2003, Dr. Priebe and Plaintiff agreed Plaintiff would not be able to start a Hepatitis C triple-therapy treatment regimen (comprised of Interferon, Ribavirin, PEG-Intron, and other medications) until Plaintiff had lost weight and gotten into shape. Dkt. 15, ¶ 6.3. Over the next ten years, Plaintiff lost weight and was eventually placed on a test dose of Ribavirin and Interferon in October, 2012. Dkt. 15, ¶¶ 6.4-6.10.

Plaintiff alleges Defendant Dixon began working at the SCC between October, 2012 and January, 2013. Dkt. 15, ¶¶ 6.10-6.11. On January 15, 2013, Defendant Dixon informed Plaintiff that Dr. Priebe had ordered a halt to Plaintiff's current Hepatitis C treatment, as he was non-responsive to the Interferon and Ribavirin. Dkt. 15, ¶ 6.11. Instead, Defendant Dixon indicated "Dr. Priebe ordered appointments with the Cardiologist, for an ultrasound, and the Optometrist, and to get a second liver biopsy, before starting the triple therapy of Interferon, Ribarivin, and Telaprevir within two (2) months." Dkt. 15, ¶ 6.12.

---

[1] Plaintiff has alleged five pages of facts in the Complaint. *See* Dkt. 15, pp. 7-11. The Court has considered all factual allegations contained in the Complaint. However, throughout this Report and Recommendation, the Court will only discuss the factual allegations relevant to determining if Plaintiff has stated a claim for which relief can be granted.

[2] The SCC exclusively houses individuals whom a Washington State court has found, beyond a reasonable doubt, to be sexually violent predators ("SVP"). Wash. Rev. Code § 71.09.010 *et seq.* (2015). Determinations of SVP status and commitment to the SCC are effectuated in a civil proceeding, and the primary purpose of the commitment is long-term intensive inpatient treatment. Wash. Rev. Code § 71.09.010 (2015).

1   Plaintiff consulted with Dr. Priebe on April 3, 2013. Dkt. 15, ¶ 6.13. At this appointment,

2   Dr. Priebe informed Plaintiff he should have already been receiving a triple-therapy regimen of

3   Interferon, Ribavirin, and Telaprevir, rather than only Interferon and Ribavirin. Dkt. 15, ¶¶ 6.14-

4   6.15. Dr. Priebe also informed Plaintiff he should have been receiving a higher dose of Ribavirin.

5   Dkt. 15, ¶ 6.14.

6   Plaintiff alleges he next saw Defendant Dixon in mid-July, 2013. Dkt. 15, ¶ 6.21. At this

7   time, Defendant Dixon advised Plaintiff she wanted him to get into better shape before beginning

8   the triple therapy treatment regimen. Dkt. 15, ¶ 6.21. Plaintiff alleges this was inconsistent with

9   the results from his recent appointment with an unnamed cardiologist, which had shown he was

10   healthy enough for treatment. Dkt. 15, ¶ 6.21. During this meeting, Defendant Dixon also

11   informed Plaintiff Dr. Priebe wanted Plaintiff to see an Optometrist. Dkt. 15, ¶ 6.21.

12   **STANDARD OF REVIEW**

13   A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual

14   allegations accepted as true, fails to "raise a right to relief above the speculative level". *Bell*

15   *Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

16   To survive a motion to dismiss, a complaint must contain sufficient
factual matter, accepted as true, to "state a claim to relief that is

17   plausible on its face." A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the

18   reasonable inference that the defendant is liable for the misconduct
alleged. The plausibility standard is not akin to a probability

19   requirement, but it asks for more than a sheer possibility that a
defendant has acted unlawfully.

20   
21   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570). A

22   complaint must contain a "short and plain statement of the claim showing that the pleader is

23   entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need

24   only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

1    *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the

2    pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."

3    *Iqbal*, 556 U.S. at 678.

4         While the Court must accept all the allegations contained in the Complaint as true, the

5    Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.*

6    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

7    statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649

8    (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to

9    state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court

10    is to construe the complaint liberally, such construction "may not supply essential elements of

11    the claim that were not initially pled." *Pena*, 976 F.2d at 471.

12                                   **DISCUSSION**

13         In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he

14    suffered a violation of rights protected by the Constitution or created by federal statute, and (2)

15    the violation was proximately caused by a person acting under color of state law. *See Crumpton*

16    *v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to

17    identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

18    (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually

19    named defendants caused, or personally participated in causing, the harm alleged in the

20    complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

21       I.      **Eighth Amendment Claim**

22         Defendant Dixon argues Plaintiff has failed to state a claim for deliberate indifference

23    under the Eight Amendment. However, the Due Process Clause of the Fourteenth Amendment,

24

REPORT AND RECOMMENDATION ON
DEFENDANT DIXON'S MOTION TO DISMISS -
4

1   rather than the Eighth Amendment, applies to claims of constitutionally inadequate medical care

2   for involuntarily committed SVPs at the SCC. *Mitchell v. State of Washington*, ___ F.3d. ___,

3   2016 WL 945677, at *3 (9th Cir. 2016) (*citing Youngberg v. Romeo*, 457 U.S. 307, 321-22, 102

4   S.Ct. 2452, 2462, 73 L.Ed.2d. 28 (1982) *and Ammons v. Wash. Dep't. of Soc. & Health Servs.*,

5   648 F.3d 1020, 1027 (9th Cir. 2011)). *See also Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)

6   *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). Thus, Plaintiff's claims—as well as

7   Defendant's motion to dismiss—must be analyzed under the Fourteenth Amendment Due

8   Process Clause.

9       II.      **Fourteenth Amendment Due Process Claim**

10          A. *Legal Standard*

11              1.  Deliberate Indifference

12          Though the Due Process Clause, rather than the Eighth Amendment, governs claims of

13  constitutionally inadequate medical care by SVPs, the Ninth Circuit has held "SVPs must, at a

14  minimum, be afforded the rights afforded prisoners confined in a penal institution. Thus, the

15  Eighth Amendment still provides a floor for the level of protection that SVPs must receive under

16  the Fourteenth Amendment, and because the contours of the Eighth Amendment are more

17  defined, Eighth Amendment jurisprudence may provide helpful guidance as to the standards to

18  be applied." *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir.2007), *vacated on other grounds,* 556

19  U.S. 1256, 129 S.Ct. 2431, 174 L.Ed.2d 226 (2009).

20          An Eighth Amendment medical claim has two elements: (1) "the seriousness of the

21  prisoner's medical need and [(2)] the nature of the defendant's response to that need." *McGuckin

22  v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc.

23  v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc). A medical need is serious "if the failure to

24

treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-1060.

If a plaintiff shows he suffered from a serious medical need, he must then show the prison officials responded to the need with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1970). "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992).  Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id*. A prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious medical needs, "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or [ ] may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988). However, delay in providing a prisoner treatment does not constitute an Eighth Amendment violation unless the delay causes substantial harm. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407

1    (9th Cir. 1985); *Amarir v. Hill*, 243 Fed. Appx. 353, 354 (9th Cir. 2007). Further, a mere

2    "'difference of medical opinion' as to the need to pursue one course of treatment over another"

3    does not constitute deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

4    A prisoner must instead show the chosen course of treatment "was medically unacceptable under

5    the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's]

6    health." *Id. See also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

7                       2.   *Youngberg* Professional Judgment

8           Though the Ninth Circuit has historically used the deliberate indifference framework to

9    analyze claims of constitutionally deficient medical care by a civilly committed individual, the

10    Ninth Circuit recently evaluated a SVP's claims of constitutionally-deficient medical care solely

11    using the "professional judgment" test articulated in *Youngberg v. Romeo. See Mitchell*, ___

12    F.3d. ___, 2016 WL 945677, at *3. Under the *Youngberg* professional judgment standard,

13    "[i]nvoluntarily committed patients in state mental health hospitals have a Fourteenth

14    Amendment due process right to be provided safe conditions by the hospital administrators . . . .

15    [W]hether a hospital administrator has violated a patient's constitutional rights is determined by

16    whether the administrator's conduct diverges from that of a reasonable professional." *Ammons*,

17    648 F.3d at 1027. A medical decision, "if made by a professional, is presumptively valid;

18    liability may be imposed only when the decision by the professional is such a substantial

19    departure from accepted professional judgment, practice, or standards as to demonstrate that the

20    person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S.

21    at 323. Under both the Eighth Amendment deliberate indifference and the *Youngberg*

22    professional judgment standard, mere medical malpractice or negligence is insufficient to

23

24

1  demonstrate a Constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285,

2  292, 50 L.Ed. 2d 251 (1976); *Patten*, 274 F.3d at 842-43.

3       The Court analyzes Plaintiff's claims under both the Eighth Amendment deliberate

4  indifference standard *and* under the *Youngberg* professional judgment standard.

5       B.  <u>*Application of Standard*</u>

6       Defendant Dixon argues Plaintiff has failed to properly plead both elements of an Eighth

7  Amendment claim. Specifically, Defendant Dixon argues Plaintiff failed to plead the existence of

8  a serious medical need, or that Defendant Dixon was deliberately indifferent to Plaintiff's serious

9  medical need.

10       Plaintiff alleges he was diagnosed with Hepatitis-C. Dkt. 8, ¶ 6.1. Viewed in the light

11  most favorable to Plaintiff, these allegations sufficiently establish the existence of a serious

12  medical need. *See McGuckin*, 974 F.2d at 1059-60. *See also Brown v. Johnson*, 387 F.3d 1344,

13  1351 (11th Cir. 2004).

14       However, while Plaintiff has adequately pled the existence of a serious medical need, he

15  has failed to properly plead Defendant Dixon was deliberately indifferent to that need. Plaintiff

16  makes the conclusory allegation Defendant Dixon was responsible for denying, delaying, or

17  otherwise preventing Plaintiff from obtaining adequate medical care. Dkt. 15, ¶¶ 4.9-4.11, 6.27.

18  But, a review of Plaintiff's complaint does not reveal any factual allegations consistent with this

19  conclusory statement.  Plaintiff alleged Defendant Dixon consulted with him on two occasions.

20  First, in January, 2013, Defendant Dixon informed Plaintiff that Dr. Priebe had ordered a halt to

21  Plaintiff's Hepatitis-C treatment as he was not responding to the medication, and that Dr. Priebe

22  had also ordered follow-ups with several specialists before he could begin the triple therapy

23  regimen. Dkt. 15, ¶¶ 6.11-6.12. Second, in July, 2013, Defendant Dixon advised Plaintiff he

24

1  needed to be in better shape before they could begin the triple-therapy regimen, and also advised

2  Plaintiff Dr. Priebe recommended he see an optometrist. Dkt. 15, ¶¶ 6.21-6.22.

3        Notably, Plaintiff does not allege it was Defendant Dixon who failed to place Plaintiff on

4  the triple-therapy or otherwise ordered a halt to his Hepatitis C treatment.  In fact, Plaintiff alleges

5  the treatment decisions at issue were either made prior to Defendant Dixon joining the SCC

6  medical staff, or were made by individuals other than Defendant Dixon. *See* Dkt. 15, ¶¶ 6.5-6.10,

7  6.14-6.19, 6.23 (alleging Mark Davis, Dr. Leslie Sziebert, and Nurse Manager Kim Deitch were

8  "involved with a scheme to interfere with Plaintiff's medical care[.]"), 9.5 ("Dr. Sziebert, should

9  have followed Dr. Priebes' orders for Hepatitis-C treatment, rather then [sic] customized Mr.

10 Mitchell's treatment to save money."). For example, though Plaintiff contends he should have

11 always been on the triple-therapy regimen rather than the dual therapy of Interferon and Ribavirin,

12 Plaintiff was placed on the dual therapy prior to Defendant Dixon beginning her employment at the

13 SCC. *See* Dkt. 15, ¶¶ 6.8-6.10. As for Plaintiff's allegation that in July, 2013, Defendant Dixon felt

14 Plaintiff needed to be in better shape before administering the triple-therapy treatment, Plaintiff

15 claims an unnamed cardiologist found his heart was healthy enough for treatment. Dkt. 15, ¶ 6.21.

16 However, Plaintiff does not allege he was otherwise in good enough shape to be considered a

17 candidate for treatment. In any event, a mere "'difference of medical opinion' as to the need to

18 pursue one course of treatment over another" does not establish Defendant Dixon was deliberately

19 indifferent to Plaintiff's serious medical needs. *See McIntosh*, 90 F.3d at 332. Moreover, Plaintiff

20 has not alleged how a delay in Plaintiff's treatment, whether or not such a delay was caused by

21 Defendant Dixon, led to any harm. *See Shapley*, 766 F.2d at 407.

22       In his response to Defendant Dixon's motion, Plaintiff also argues Defendant Dixon should

23 have known Plaintiff was not receiving the proper doses and types of Hepatitis C medication as

24

REPORT AND RECOMMENDATION ON
DEFENDANT DIXON'S MOTION TO DISMISS -
9

prescribed by Dr. Priebe. *See* Dkt. 30, p. , 4. However, in assessing whether an official acted with deliberate indifference, a court's inquiry must focus on what the official actually perceived, not what the official should have known. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). Plaintiff also alleges throughout his complaint Defendant Dixon can be found liable premised on a theory of vicarious liability, based on the actions of others at the SCC. *See, e.g.*, Dkt. 15, ¶ 6.4. However, *respondeat superior* is inapplicable in a Section 1983 action. *See Monell v. Department of Social Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978). "[W]hen a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). *See also Iqbal*, 556 U.S. at 676. Moreover, though Plaintiff alleges Defendant Dixon promulgated and/or implemented policies which directly led to a violation of Plaintiff's constitutional rights, Plaintiff does not actually identify what, if any, SCC Policy Defendant Dixon purportedly promulgated or implemented. In fact, the only policy Plaintiff alleges throughout his complaint is a "scheme to interfere with [his] medical care because it was too expensive." Dkt. 15, ¶ 6.23. Plaintiff alleges the individuals behind this policy were Defendant *Sziebert*, and two individuals who are not named as defendants in this case: Mark Davis and Kim Deitch. Dkt. 15, ¶¶ 6.23, 9.5.

Even taken in the light most favorable to Plaintiff, these allegations do not plausibly establish Defendant Dixon took any action or failed to take any action which denied or delayed Plaintiff's treatment. *See Iqbal*, 556 U.S. at 678; *Wilhelm v. Rotman*, 680 F.3d 1113, 1122-23 & n. 8 (9th Cir. 2012); *Hunt v. Dental Dep't*, 865 F.2d 198, 200-01 (9th Cir. 1989).

1    Plaintiff's allegations against Defendant Dixon are also insufficient under the *Youngberg*

2    professional judgment standard. As a professional, Defendant Dixon's medical decisions are

3    presumptively valid. *Youngberg*, 457 U.S. at 323.  Therefore, absent allegations indicating

4    Defendant Dixon's conduct was "such a substantial departure from accepted professional

5    judgment, practice, or standards as to demonstrate that the person responsible actually did not

6    base the decision on such a judgment," the Court cannot impose liability for a professional's

7    medical decisions. *Id. See also Ammons v. Washington Dept. of Social and Health Services*, 648

8    F.3d 1020, 1038 (9th Cir. 2011) ("exercising *any* professional judgment will shield a state

9    hospital professional from § 1983 liability [under *Youngberg*.]") (Bybee, J., concurring in part

10   and dissenting in part).

11   Plaintiff's allegations in the complaint amount to, at most, an argument Defendant Dixon

12   should have provided different medical care. Dkt. 15, ¶ 9.5. As discussed above, however, the

13   Plaintiff has not pled facts which plausibly suggest Defendant Dixon denied or interfered with

14   Plaintiff's receipt of the triple therapy regimen prescribed by Dr. Priebe, or that Defendant

15   Dixon's concern about Plaintiff's fitness for the triple therapy regimen in July, 2013 was a

16   "substantial departure from accepted professional judgment." *Youngberg*, 457 U.S. at 323. *See*

17   *also Jackson*, 90 F.3d at 332 (noting, where a prisoner disagrees with a chosen course of

18   treatment, the prisoner must demonstrate the treatment "was medically unacceptable under the

19   circumstances").

20   In addition to the factual allegations discussed above, Plaintiff points to codes governing

21   the licensing and discipline of nurse practitioners contained in Washington State statutes and

22   regulations to argue Defendant Dixon's conduct fell below the appropriate level of care. Dkt. 15,

23   ¶ 4.11. *See* Wash. Rev. Code §§ 18.79, 18.130; Wash. Admin. Code. §§ 246-840-700, 246-840-

24

REPORT AND RECOMMENDATION ON
DEFENDANT DIXON'S MOTION TO DISMISS -
11

710. However, the forms of conduct prohibited by Plaintiff's cited authorities are inapposite to the constitutional standards of deliberate indifference or *Youngberg* professional judgment. *See, e.g.*, Wash. Admin. Code § 246-840-710 (citing the conduct described in Wash. Admin. Code § 18-130-180 as grounds for disciplinary action for violations of standards of nursing conduct or practice); Wash. Admin. Code § 18-130-180(4) (incorporating incompetence, negligence, and malpractice in the definition of "unprofessional conduct"). The Eighth Amendment deliberate indifference standard, as well as the *Youngberg* professional judgment standard, require more than mere negligence on the part of the Defendant. *Estelle,* 429 U.S. at 106; *Patten*, 274 F.3d at 842-43 (noting a claim of negligence only requires a showing of "*any* departure," from the standard of care, rather than the "*substantial* departure" required by *Youngberg*).[3]

Finally, in his response to Defendant Dixon's motion to dismiss, Plaintiff has made several new allegations not contained in Plaintiff's complaint. *See* Dkt. 30, p. 3-5. Because these allegations are not a part of Plaintiff's complaint, they are not relevant to resolving Defendant Dixon's motion to dismiss. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("When reviewing a motion to dismiss, we 'consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.") (*quoting Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam)).

As Plaintiff has failed to allege facts which would plausibly suggest Defendant Dixon was deliberately indifferent to Plaintiff's serious medical needs or Defendant Dixon's conduct was a substantial departure from accepted professional judgment, practices, or standards, Plaintiff has failed to state a claim under the Fourteenth Amendment Due Process clause.

---

[3] In the same vein, Plaintiff's allegations pertaining to *res ipsa loqitur* fail to state a due process claim. *See Reber v. United States,* 951 F.2d 961, 964 (9th Cir. 1991). *Res ipsa loquitur*, if applicable, allows only for an inference of negligence, which cannot constitute a violation of the stricter standards of deliberate indifference or the *Youngberg* professional judgment standard. *Id.*; *Estelle*, 429 U.S. at 106.

1    III.    **Fourteenth Amendment Equal Protection Claim**

2         The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all

3    persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living*

4    *Center*, 473 U.S. 432, 439 (1985).  To bring a successful equal protection claim, a plaintiff must

5    show differential treatment from a similarly situated class. *See Washington v. Davis*, 426 U.S.

6    229, 239 (1976).  For this differential treatment to give rise to a claim under 42 U.S.C. § 1983,

7    "one must show intentional or purposeful discrimination."  *Draper v. Rhay*, 315 F.2d 193, 198

8    (9th Cir. 1963) (inmate failed to show § 1983 violation in absence of "intentional or purposeful

9    discrimination."

10        Defendant Dixon has moved to dismiss all of Plaintiff's claims against her; however,

11   Defendant Dixon has not argued how Plaintiff has failed to plead an equal protection claim under

12   the Fourteenth Amendment. Nonetheless, for the same reason Plaintiff did not sufficiently plead

13   a cause of action under the Fourteenth Amendment Due Process Clause as to Defendant Dixon,

14   Plaintiff has failed to plead a cause of action under the Fourteenth Amendment Equal Protection

15   Clause as to Defendant Dixon.

16        For Plaintiff to successfully plead a cause of action predicated on the equal protection

17   clause of the Fourteenth Amendment, Plaintiff must allege differential treatment and "intentional

18   or purposeful discrimination" on the part of the Defendant. Plaintiff alleges he was denied a

19   grievance procedure which would allow him to address his concerns with SCC staff about the

20   conditions of his confinement. Dkt. 15, ¶ 8.4. Plaintiff alleges he has a basic right to file a

21   grievance, and his inability to file grievances amounts to unequal treatment between SCC residents

22   and similarly situated prisoners or other committed persons. Dkt. 15, ¶¶ 8.4, 8.5. However, there is

23   no constitutionally protected right to a specific grievance process. *See Ramirez v. Galaza,* 334 F.3d

24

1   850, 860 (9th Cir.2003) (citing *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.1988)). Further, even

2   assuming Plaintiff has stated an equal protection claim premised on the lack of a grievance process,

3   Plaintiff has not plead *Defendant Dixon* was in any way responsible, or even involved, in

4   preventing Plaintiff from filing a grievance. *See* Dkt. 15, ¶¶ 6.1-6.28. In fact, Plaintiff has not plead

5   he ever attempted to file a grievance at all.

6       Because Plaintiff has failed to allege facts which could plausibly establish Defendant

7   Dixon engaged in intentional or purposeful discrimination, Plaintiff has failed to state a claim

8   under the Fourteenth Amendment Equal Protection Clause.

9                                   **CONCLUSION**

10      Based on the foregoing, the Court concludes Plaintiff has failed to state a claim on which

11  relief can be granted. Accordingly, the Court recommends Defendant Dixon's Motion to Dismiss

12  be granted. The Court further recommends Plaintiff be given leave to amend his complaint in

13  order to state a claim against Defendant Dixon. *See Lucas v. Dep't of Corrections*, 66 F.3d 245,

14  248-49 (9th Cir. 1995) ("unless it is absolutely clear that no amendment can cure the defect . . . a

15  pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend

16  prior to dismissal of the action.").

17      Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

18  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

19  6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

20  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

21  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June

22  10, 2016, as noted in the caption.

23

24

REPORT AND RECOMMENDATION ON
DEFENDANT DIXON'S MOTION TO DISMISS -
14

1    Dated this 19th day of May, 2016.

2

3                                        David W. Christel
                                         United States Magistrate Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION ON
DEFENDANT DIXON'S MOTION TO DISMISS -
15