1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10    GEORGE O MITCHELL,

11                          Plaintiff,

12            v.

13    WASHINGTON STATE SPECIAL
      COMMITMENT CENTER CHIEF
14    MEDICAL DIRECTOR, DR. LESLIE
      SZIEBERT,
15
                           Defendant.
16

CASE NO. 3:15-CV-05226-RBL-DWC

REPORT AND RECOMMENDATION

Noting Date: March 16, 2018

17        The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

18    States Magistrate Judge David W. Christel. Plaintiff George O. Mitchell, proceeding *pro se*,

19    initiated this civil rights action. Presently pending before the Court are Motions for Summary

20    Judgment filed by Plaintiff (Dkt. 69) and Defendant, Dr. Leslie Sziebert ("Defendant") (Dkt. 73).

21        The Court concludes Plaintiff failed to sufficiently rebut Defendant's summary judgment

22    showing on Plaintiff's claim that Defendant was deliberately indifferent to his serious medical

23    needs. The Court also concludes Plaintiff failed to rebut Defendant's summary judgment

24    showing on Plaintiff's equal protection claims. As the Court finds Plaintiff's federal claims

1  should not continue in this action, and as none of the factors under the pendent jurisdiction

2  doctrine support exercising supplemental jurisdiction, the Court finds supplemental jurisdiction

3  should not be exercised over Plaintiff's state law claim. Therefore, the Court recommends

4  denying Plaintiff's Motion for Summary Judgment (Dkt. 69), granting Defendant's Motion for

5  Summary Judgment (Dkt. 73), and closing this case.

6                                    **BACKGROUND**

7       Plaintiff, a civilly-committed detainee at the Washington Special Commitment Center

8  ("SCC"),[1] filed the Second Amended Complaint in this § 1983 action on September 17, 2015.[2]

9  Dkt. 15. Plaintiff's claims stem from the medical treatment he received for his Hepatitis C, and

10  grievances he filed related to his medical treatment, while Defendant was SCC's Medical

11  Director. *See id.* In particular, Plaintiff alleges Defendant was deliberately indifferent to his

12  serious medical needs in violation of the Eighth and Fourteenth Amendments. *See id.* Plaintiff

13  also alleges Defendant violated his Fourteenth Amendment Equal Protection rights. *Id.* at 12-15.

14  Plaintiff further brings state law claims against Defendant. *Id.* at 16-17.

15       Plaintiff filed his Motion for Summary Judgment on November 16, 2017. Dkt. 69.

16  Plaintiff filed a Brief in Support of his Motion for Summary Judgment and several exhibits that

17  same day. *See* Dkt. 70, 71. On November 27, 2017, Defendant filed a Motion for Summary

18  Judgment. Dkt. 73. To support his Motion for Summary Judgment, Defendant filed a Declaration

19  _____

20       [1] The SCC houses individuals whom a Washington State court has found, beyond a reasonable doubt, to be
    sexually violent predators ("SVP"). *See* Wash. Rev. Code §§ 71.09.010-.903. Determinations of SVP status and
21  commitment to the SCC are effectuated in a civil proceeding, and the primary purpose of the commitment is long-
    term intensive inpatient treatment. *Id.*

22       [2] Plaintiff originally filed his claims against several defendants. *See* Dkt. 1. In his Second Amended
    Complaint, Plaintiff retained only Defendant Sziebert and Galina Dixon as defendants. *See* Dkt. 15. The Court
23  thereafter dismissed Plaintiff's claims against Galina Dixon, but gave Plaintiff leave to file an amended complaint.
    Dkt. 32, 37, 39. Rather than filing another amended complaint, Plaintiff filed a Motion to Dismiss Galina Dixon
24  from the case, which the Court granted. Dkt. 40, 43, 44. Therefore, Defendant Sziebert is the only remaining
    defendant in this case.

and multiple exhibits. Dkt. 77. Moreover, Defendant filed a Response opposing Plaintiff's Motion for Summary Judgment. Dkt. 74. On December 13, 2017, Plaintiff filed a Response opposing Defendant's Motion for Summary Judgment. Dkt. 80. Both Motions for Summary Judgment became ready for the Court's consideration on January 26, 2018. Dkt. 79.

**STANDARD OF REVIEW**

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When parties file cross-motions for summary judgment, as the parties have done here, each motion "must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court must review the evidence submitted in support of each cross-motion. *Id.* And, although the parties may each assert there are

1  no uncontested issues of material fact, the Court must determine whether disputed issues of

2  material fact are present. *Id.*; *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1148 (D. Idaho 2010).

3  **DISCUSSION**

4      Defendant and Plaintiff both seek summary judgment. *See* Dkt. 69; Dkt. 73. On Plaintiff's

5  claim that Defendant was deliberately indifferent towards his serious medical needs, Defendant

6  contends (1) he did not personally participate in Plaintiff's treatment until April 2013, and (2) the

7  treatment Plaintiff received after April 2013 did not amount to deliberate indifference. Dkt. 73,

8  pp. 6-7. Moreover, Defendant argues Plaintiff's claims on equal protection, the grievance

9  process, and state law violations fail. *Id.* at 9-12.

10  **I.  Personal Participation Prior to April 2013**

11      Plaintiff alleges Defendant violated his constitutional rights by being deliberately

12  indifferent to his serious medical needs. Dkt. 15, pp. 12-13, 14-16. Specifically, Plaintiff alleges

13  Defendant provided inadequate and untimely medical care for his Hepatitis C. *Id.* at 3, pp. 12-17.

14  Defendant contends he cannot be held liable for any alleged constitutional violations occurring

15  prior to April 2013 because he did not personally participate in Plaintiff's treatment until that

16  time. Dkt. 73, pp. 6-7.

17      To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a

18  violation of rights protected by the Constitution or created by federal statute, and (2) the

19  violation was proximately caused by a person acting under color of state law. *See Crumpton v.*

20  *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to

21  identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

22  (1994).

23      To satisfy the second prong, a plaintiff must allege facts showing how individually

24  named defendants caused, or personally participated in causing, the harm alleged in the

complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633. Further, a § 1983 suit cannot be based on vicarious liability alone, but must be based on the defendant's own conduct violating the plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989).

The facts surrounding Plaintiff's Hepatitis C treatment are undisputed. On October 12, 2000, Plaintiff was diagnosed with Hepatitis C. Dkt. 15, p. 7.[3] After receiving this diagnosis, Plaintiff began seeing Dr. W. Michael Priebe, M.D., for treatment. *Id.* On February 3, 2003, Dr. Priebe and Plaintiff "agreed to delay" treatment for his Hepatitis C "until Plaintiff had a chance to lose weight and get into better physical shape." *Id.* Plaintiff thereafter lost about thirty pounds. *Id.* However, Dr. Thomas Bell, who was SCC's Medical Director at the time, refused to treat Plaintiff.[4] *Id.*

Defendant began serving as SCC's Medical Director on December 9, 2009. Dkt. 77 (Sziebert Dec.) ¶ 1. In July 2012, Plaintiff started Hepatitis C treatment administered by SCC Advanced Registered Nurse Practitioner Howard W. Welsh. Dkt. 15, pp. 7-8; *see also* Dkt. 71-1, pp. 20-24 (Nurse Welsh's treatment notes). On October 11, 2012, Nurse Welsh gave Plaintiff a test

---

[3] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

[4] Dr. Bell's actions were the subject of a separate § 1983 action initiated by Plaintiff. *See Mitchell v. Washington*, 818 F.3d 436 (9th Cir. 2016). Plaintiff acknowledges that this previous case does not pertain his current case. Dkt. 80, p. 17.

1  dose of Ribavirin of 200 mg twice per day. Dkt. 15, p. 8; *see also* Dkt. 71-1, pp. 25-29. On October

2  17, 2012, Plaintiff's dose of Ribavirin increased to 400 mg twice per day, and he also began

3  receiving Peginterferon Alfa-2b ("Interferon") by needle to the abdomen once per week. Dkt. 15,

4  p. 8; *see also* Dkt. 71-1, pp. 25-29.

5          On January 15, 2013, Nurse Dixon told Plaintiff that Dr. Priebe "ordered a halt" to the

6  Hepatitis C treatment because Plaintiff was non-responsive to the medications. Dkt. 15, p. 8. On

7  April 3, 2013, Plaintiff saw Dr. Priebe. *Id.* at 9; *see also* Dkt. 71-1, pp. 68-71. When they discussed

8  Plaintiff's Hepatitis C treatment, Dr. Priebe indicated that he thought Plaintiff was receiving the

9  "triple therapy" of Interferon, Ribavirin, and Telaprevir. Dkt. 15, p. 9; *see also* Dkt. 71-1, p. 68. In

10  his treatment notes from this visit, Dr. Priebe noted Plaintiff instead received "dual therapy" of

11  Interferon and Ribavirin, but "treatment was stopped because of nonresponse." Dkt. 71-1, p. 68.

12  Dr. Priebe further noted Plaintiff was still interested in receiving "triple therapy." *Id.*

13          Plaintiff maintains he wrote Defendant a letter "addressing concerns about the Hepatitis C

14  treatment" on February 6, 2013. Dkt. 70, p. 3; *see also* Dkt. 71-2, pp. 76. Plaintiff received no

15  reply. Dkt. 70, p. 3. On April 10, 2013, Plaintiff sent Defendant a second letter, and again received

16  no reply. Dkt. 70, p. 4; Dkt. 71-2, p. 79.

17          On April 19, 2013, Plaintiff and Defendant met at Plaintiff's request to discuss Plaintiff's

18  Hepatitis C treatment. Dkt. 15, p. 9; Dkt. 71-1, p. 73. Defendant reviewed Plaintiff's medical charts

19  and determined Nurse Welsh "took it upon himself to 'customize'" Plaintiff's treatment. Dkt. 71-1,

20  p. 73. Additionally, Defendant told Plaintiff he did not receive his letters and did not know their

21  contents. Dkt. 70, p. 4; Dkt. 80, p. 5. After meeting with Plaintiff, Defendant began monitoring

22  Plaintiff's Hepatitis C treatment, although he "did not generally provide primary care for Plaintiff."

23  Dkt. 77 (Sziebert Dec.) ¶ 3.

24

1    In all, the undisputed evidence shows Defendant did not personally participate in Plaintiff's

2    treatment until April 2013. Rather, the evidence plainly shows Plaintiff's treatments until April

3    2013 were decided on and administered by Dr. Priebe, Nurse Dixon, and Nurse Welsh. *See* Dkt.

4    15, pp. 7-9; Dkt. 70, pp. 2-3; Dkt. 71-1, pp. 18-32, 49-51; 71-2, pp. 6-7, 35-36; Dkt. 77 (Sziebert

5    Dec.) ¶ 3. Furthermore, there is no evidence Defendant received Plaintiff's February or April 2013

6    letters regarding his treatment; thus, the evidence does not indicate Defendant deliberately ignored

7    Plaintiff's serious medical needs.

8    Plaintiff argues Defendant participated in his Hepatitis C treatment during this time because

9    Defendant supervised those who treated Plaintiff. *See* Dkt. 15, pp. 3-4, 17; Dkt. 80, pp. 7-8, 17.

10   Plaintiff likewise references SCC's job description for the "Medical Director" position in an

11   attempt to show Defendant violated his official duties, as his job description includes supervising

12   SCC's medical employees. *See, e.g.*, Dkt. 15, pp. 3-4, 17; Dkt. 70, pp. 9, 11-12; Dkt. 80, pp. 10-

13   12. However, a supervisor can only be liable under § 1983 if he was personally involved in the

14   alleged constitutional deprivation or there is a causal connection between the supervisor's conduct

15   and the constitutional deprivation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citation

16   omitted). Here, the evidence demonstrates Defendant was not directly involved in, and had no

17   casual connection to, Plaintiff's treatment until April 2013.[5] *See* Dkt. 15, pp. 7-9; Dkt. 70, pp. 2-3;

18   Dkt. 71-1, pp. 18-32, 49-51; 71-2, pp. 6-7, 35-36; Dkt. 77 (Sziebert Dec.) ¶ 3. Therefore, even

19   assuming unconstitutional conduct by Defendant's subordinates, he cannot be liable for treatment

20   prior to April 2013.

21   _____

22   [5] In an attempt to show Defendant was involved in Plaintiff's treatment during this time, Plaintiff points to
an e-mail Nurse Welsh sent Defendant on September 5, 2012. *See* Dkt. 15, pp. 9-10; Dkt. 70, pp. 4-5. In the e-mail,
Nurse Welsh told Defendant triple therapy was recommended for Plaintiff's Hepatitis C, and asked Defendant,

23   "Would you like to proceed?" Dkt. 71-1, p. 75. Plaintiff did not submit any other e-mails to the Court; thus, it is
unclear whether Defendant responded to Nurse Welsh's inquiry. *See generally* Dkt. Hence, this e-mail alone does
not establish Defendant participated in Plaintiff's treatment during this time, given that it does not indicate whether

24   Defendant approved or disapproved of Plaintiff's treatment.

1    **II.    Deliberate Indifference after April 2013**

2    Defendant acknowledges that he participated in Plaintiff's Hepatitis C treatment

3    beginning April 2013. Dkt. 73, p. 7; Dkt. 77 (Sziebert Dec.) ¶ 3. Accordingly, the inquiry for this

4    time period is whether Defendant was deliberately indifferent to Plaintiff's serious medical

5    needs.

6    A.    Legal Standard

7    The Fourteenth Amendment applies to claims of constitutionally inadequate medical care

8    for involuntarily committed sexually violent predators. *Mitchell v. State of Washington*, 818 F.3d

9    436, 443 (9th Cir. 2016) (citing *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982); *Ammons v.*

10   *Wash. Dep't of Soc. & Health Servs.*, 648 F.3d 1020, 1027 (9th Cir. 2011)). The Ninth Circuit

11   has held sexually violent predators must, "at a minimum, be afforded the rights afforded

12   prisoners confined in a penal institution." *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir. 2007),

13   *vacated on other grounds*, 556 U.S. 1256 (2009). Therefore, "the Eighth Amendment still

14   provides a floor for the level of protection that [sexually violent predators] must receive under

15   the Fourteenth Amendment." *Id*. Hence, the Court analyzes Plaintiff's claims by considering

16   decisions defining the rights of prisoners under the Eighth Amendment.

17   Deliberate indifference to serious medical needs of prisoners "constitutes the unnecessary

18   and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation

19   omitted). An Eighth Amendment medical claim has two elements: (1) "the seriousness of the

20   prisoner's medical need and [(2)] the nature of the defendant's response to that need." *McGuckin*

21   *v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc.*

22   *v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc).

23

24

1    A medical need is serious "if the failure to treat the prisoner's condition could result in

2    further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974

3    F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable

4    doctor or patient would find important and worthy of comment or treatment; the presence of a

5    medical condition that significantly affects an individual's daily activities; or the existence of

6    chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for

7    medical treatment." *Id.* at 1059-1060.

8        If a plaintiff shows he suffered from a serious medical need, he must then show the

9    prison officials responded to the need with deliberate indifference. *See Farmer v. Brennan*, 511

10   U.S. 825, 834 (1994). Deliberate indifference to a prisoner's serious medical need requires "a

11   purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In

12   other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or

13   possible medical need." *Id.* A prison official, accordingly, will not be found deliberately

14   indifferent to a prisoner's serious medical needs "unless the official knows of and disregards an

15   excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be

16   aware of facts from which the inference could be drawn that a substantial risk of serious harm

17   exists, and he must also draw the inference." *Id.* Deliberate indifference "may appear when

18   prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown

19   by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390,

20   394 (9th Cir. 1988).

21

22

23

24

B. Analysis

As explained above, Defendant became involved in Plaintiff's Hepatitis C treatment in April 2013. The facts surrounding Plaintiff's treatment from April 2013 forward are undisputed. During 2013 and early 2014, Defendant followed Dr. Priebe's recommendation that Plaintiff complete a pre-treatment evaluation. Dkt. 77, ¶ 4. Plaintiff could not immediately begin a new treatment due to the previous failed course of therapy. *Id.* On April 7, 2014, Defendant referred Plaintiff to Dr. Priebe for a consultation on Hepatitis C treatment. *Id.*; *see also* Dkt. 77-1, p. 2. On May 15, 2014, Dr. Priebe saw Plaintiff for this referral. Dkt. 77-1, pp. 2-6. Due to "side effects" Plaintiff suffered during his prior treatment, Dr. Priebe recommended Plaintiff "wait less than one year" for a new treatment to become available. *Id.* at 5; *see also id.* at 2; Dkt. 77 (Sziebert Dec.) ¶ 4. Dr. Priebe further recommended Plaintiff follow up with him for a re-evaluation in six months. Dkt. 77-1, p. 5.

On December 6, 2014, Plaintiff submitted a request to SCC's medical clinic for a consultation to learn about "the new medication Harvoni." Dkt. 77 (Sziebert Dec.) ¶ 5; Dkt. 77-2, p. 2. Nurse Laura MacGregor saw Plaintiff on December 16, 2014. Dkt. 77 (Sziebert Dec.) ¶ 5; Dkt. 77-2, p. 2. Nurse MacGregor advised Plaintiff of the course of treatment and side effects. Dkt. 77-2, p. 2. In addition, Nurse MacGregor made a request for Plaintiff to have an appointment with Dr. Priebe to discuss his Hepatitis C treatment and Harvoni. Dkt. 77-3, p. 2. Nurse MacGregor further ordered blood work to be done for Plaintiff's appointment with Dr. Priebe. Dkt. 77-2, p. 2. On December 30, 2014, the blood work was performed, and showed a Hepatitis C viral load of 5,980,000 viruses per milliliter. Dkt. 77-4, p. 2.

On January 21, 2015, Plaintiff saw Dr. Priebe and discussed Hepatitis C treatment. *Id.* at 2-5. Dr. Priebe ordered Plaintiff begin a three month course of Harvoni to treat his Hepatitis C.

*Id.* at 2, 5. This treatment was not available during Plaintiff's Hepatitis C treatments in 2012 and 2013. Dkt. 77 (Sziebert Dec.) ¶ 6. The SCC medical center administered Harvoni to Plaintiff beginning January 27, 2015. Dkt. 77-3, p. 6. Subsequent lab work in February and April 2015 showed Plaintiff's Hepatitis C viral load was not detected, confirming the success of the treatment. Dkt. 77 (Sziebert Dec.) ¶ 7; Dkt. 77-5, p. 2; Dkt. 77-6, p. 5. Overall, Defendant maintains "on a more probable than not basis that the treatment provided from April 2013 until [his] departure from SCC in July 2015 by SCC's medical providers and consulting providers . . . met or exceeded the standard of care" for Plaintiff's Hepatitis C treatment. Dkt. 77 (Sziebert Dec.) ¶ 8.

Plaintiff asserts Defendant acted deliberately indifferent towards his Hepatitis C treatment by preventing "Plaintiff from obtaining timely and adequate medical care." Dkt. 15, p. 3; *see also id.* at 12-13, 14-16. However, the evidence establishes Plaintiff's medical care during this time was not untimely or inadequate. Instead, the evidence shows Plaintiff did not undergo Hepatitis C treatment during 2013 and early 2014 based on his previously failed treatment and Dr. Priebe's recommendation that Plaintiff wait for a new treatment to become available. Dkt. 77, ¶ 4; Dkt. 77-1, pp. 2-6. Dr. Priebe made this recommendation due to the side effects Plaintiff suffered during his previous treatment. *Id.* at 5; *see also id.* at 2; Dkt. 77 (Sziebert Dec.) ¶ 4. Plaintiff does not contend Defendant acted unreasonably by following Dr. Priebe's recommendations. *See generally* Dkt. 15, 70, 80; *see also Youngberg*, 457 U.S. at 323-24 (a medical professional's decision "is presumptively valid"). Moreover, the evidence demonstrates Plaintiff saw physicians during this time as requested and began treatment on Harvoni within weeks of his request to explore this treatment option. *See, e.g.*, Dkt. 77 (Sziebert Dec.) ¶ 5; Dkt.

77-2, p. 2; Dkt. 77-4, pp. 2-5. The evidence further shows this treatment was ultimately successful. Dkt. 77-5, p. 2; Dkt. 77-6, p. 5.

In sum, the evidence establishes Defendant provided timely and adequate treatment based on Dr. Priebe's recommendations. As such, Plaintiff has not shown Defendant acted with deliberate indifference towards his Hepatitis C treatment. The Court therefore recommends granting Defendant's Motion for Summary Judgment on Plaintiff's claim of deliberate indifference, and denying Plaintiff's Motion for Summary Judgment on this claim.

### III.    Equal Protection

Plaintiff brings two claims against Defendant under the Fourteenth Amendment Equal Protection Clause. First, Plaintiff alleges Defendant violated the Equal Protection Clause based on the medical treatment he received. *See* Dkt. 70, pp. 12-13; *see also* Dkt. 15, pp. 13-14. Second, Plaintiff alleges Defendant violated Plaintiff's right to file grievances. Dkt. 15, p. 14.

A.  Medical Treatment

Plaintiff maintains Defendant violated the Equal Protection Clause because "[t]he lack of adequate and prompt medical treatment . . . Plaintiff endured would not be tolerated" in circumstances outside of SCC. *See* Dkt. 70, pp. 12-13; *see also* Dkt. 15, pp. 13-14.

The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citation omitted). To bring a successful equal protection claim, a plaintiff must show differential treatment from a similarly situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). For this differential treatment to give rise to a claim under § 1983, "one must show intentional or purposeful discrimination." *Draper v. Rhay*, 315 F.2d 193, 198 (9th Cir. 1963) (inmate failed to show § 1983 violation in absence of "intentional or purposeful discrimination").

1    Hence, for Plaintiff to prevail on an Equal Protection Clause claim, Plaintiff must not

2    only show differential treatment by Defendant, but also that Defendant intentionally or

3    purposefully discriminated against him. *Id.* As discussed in Section I, *supra*, the evidence shows

4    Defendant did not personally participate in Plaintiff's treatment until 2013. Furthermore, as

5    discussed in Section II, *supra*, the evidence shows the treatment Plaintiff received from April

6    2013 forward did not amount to deliberate indifference. In addition, Plaintiff fails to allege how

7    – and does not present any evidence showing – Defendant purposefully or intentionally

8    discriminated against him because Plaintiff belongs to a protected class. Accordingly, the Court

9    recommends granting Defendant's Motion for Summary Judgment, and denying Plaintiff's

10    Motion for Summary Judgment, on Plaintiff's equal protection claim as it relates to his medical

11    treatment.

12        B.  Grievance Process

13    Plaintiff alleges he was denied a grievance procedure to address the medical treatment he

14    received at SCC in violation of the Fourteenth Amendment's Equal Protection Clause. Dkt. 15,

15    pp. 11, 13-14. As explained in Section I, *supra*, Plaintiff maintains he wrote two letters to

16    Defendant in 2013 but never received replies. Dkt. 70, pp. 3-4; *see also* Dkt. 71-2, pp. 76, 79. On

17    April 26, 2013, Plaintiff filed a formal grievance due to the apparently undelivered letters. Dkt.

18    70, p. 5. On May 9, 2013, Plaintiff's grievance was returned, and he was told Defendant had

19    been notified. *Id.*

20    Plaintiff asserts this grievance process violated his constitutional rights. Dkt. 15, pp. 11,

21    13-14. However, there is no constitutionally protected right to a specific grievance process. *See*

22    *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams,* 855 F.2d 639, 640

23    (9th Cir. 1988)). Further, even assuming Plaintiff stated an equal protection claim premised on the

24    lack of a grievance process, Plaintiff has not plead Defendant was in any way responsible, or even

1    involved, in preventing Plaintiff from filing a grievance. Therefore, the Court recommends

2    granting summary judgment for Defendant, and denying Plaintiff's summary judgment motion,

3    on Plaintiff's grievance process claim.[6]

4    **IV.    State Law Claims**

5        Lastly, Plaintiff brings state law claims against Defendant for negligence and violations of

6    the Washington State Constitution. Dkt. 15, pp. 16-17, 19.

7        A district court has discretion over whether to exercise supplemental jurisdiction over

8    state law claims arising from the same set of operative facts that supports a federal claim. *See*

9    *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009) (citing 28 U.S.C. §§ 1367(a),

10   (c)). Ordinarily, when a district court dismisses "all claims independently qualifying for the

11   exercise of federal jurisdiction," it will dismiss all related state claims, as well. *Artis v. District of*

12   *Columbia*, No. 16-460, 2018 WL 491524, 583 U.S. ----, slip. op. at *3 (citing 28 U.S.C. §

13   1367(c)) (2018); *see also Carlsbad Tech.*, 556 U.S. at 639-40. Although the court is not required

14   to dismiss the supplemental state law claims, "in the usual case in which all federal-law claims

15   are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

16   doctrine—judicial economy, fairness, convenience, and comity—will point toward declining to

17   exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484

18   U.S. 343, 350 n.7 (1988).

19       In this case, the Court recommends granting Defendant's Motion for Summary Judgment

20   on all of Plaintiff's federal claims. Accordingly, as none of the factors under the pendent

21   jurisdiction doctrine support exercising supplemental jurisdiction, the Court recommends

22   _____

23       [6] Defendant further argues the Court should grant his summary judgment motion because he is entitled to
     qualified immunity. Dkt. 73, pp. 7-10. Given that the Court recommends granting Defendant's Motion for Summary

24   Judgment on other grounds, the Court declines to consider this additional defense.

1    declining supplemental jurisdiction over Plaintiff's state law claims and dismissing those claims

2    without prejudice.

3                                          **CONCLUSION**

4          Based on the foregoing reasons, the undersigned recommends granting Defendant's

5    Motion for Summary Judgment (Dkt. 73), denying Plaintiff's Motion for Summary Judgment

6    (Dkt. 69), and closing this case.

7          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

8    fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

9    6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

10   review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

11   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

12   March 16, 2018, as noted in the caption.

13         Dated this 23rd day of February, 2018.

14

15                                          David W. Christel

16                                          United States Magistrate Judge

17

18

19

20

21

22

23

24